Mr. Flaherty. Yes, Your Honor. This appeal involves only Claim 9 of U.S. Patent 4706-275, which claim is directed to a system for making prepaid telephone calls from any available telephone. And there are two means plus function limitations at issue. First one means for the district court found that there was no corresponding structure for that coupling function. This was a surprise ruling to AEROTEL because during the Markman hearing, AEROTEL put on the record that TELCO had withdrawn its argument that there was no structure and had agreed to AEROTEL's construction that the structure was the regular telephone system. Was there a stipulation by the parties, and we'll talk about that other stipulation later, but was there a stipulation by the parties as to the relevant level of skill in the art? Why was that never addressed anywhere? I can't find it in the Markman transcript or anywhere in the briefs. I don't recall whether there was a stipulation, but each expert gave their opinion. But you didn't submit the expert opinions. They were submitted. In connection with the Markman analysis? The expert opinions were submitted as an exhibit to the declaration in support of the claim construction brief by AEROTEL. I thought that the parties ultimately decided to proceed without the expert testimony. We did not have the experts testify at the hearing. That was the extent of the agreement. The representation by TELCO that AEROTEL and AEROTEL rely on expert testimony is not accurate. We just agreed that they would not testify at the hearing. They were available to testify, and we are relying on the expert testimony. But that's nowhere in the record, that agreement. I mean, the judge actually said that he understood you were eschewing any reliance on extrinsic evidence, and you're saying that's not true. Well, that's not my understanding. Okay. Mr. Flaherty, on page 32 of your brief, you say it's not disputed in the record in this case that the structure of the regular telephone system is well known and understood by persons of ordinary skill in the art. And you make reference to a few pages in the appendix, but I can't find anything in those few pages in the appendix that support that. Well, those should have been sites to Dr. Goodman's expert report. There's a site. If you look at the appendix, pages 1626 to 1628, those are the pages that you referenced. Okay. I'm going to go back to the appendix. I'm going to go back to the appendix. Okay. The sites should be A666 and A670. What were the sites that you gave me? Well, according to the brief, it's A1626 and 1628, 1626 through 1628. Okay. Well, those sites are wrong. Well, those sites are to the stipulation. Well, those sites are to a transcript of proceedings, and I can't tell, you know, who's speaking because there's nothing to indicate who's speaking on those three pages. But if that site is wrong and if there's some stipulation somewhere else, I'd appreciate it if you'd point me in the right direction. Okay. Well, if Your Honor is asking me what were the sites to support the assertion that the regular telephone system was well-known to a person of ordinary skill in the art, that is Dr. Goodman's expert report, A666 and A678, where he gave his opinion on the person of ordinary skill and said, the user's telephone is connected to the special exchange through a regular telephone system often referred to as the public switched telephone network, PSTN. Then he said regarding the means for coupling, the structure in the patent specification that performs this function is a telephone 81 and a regular telephone system 82 and figure 3. And just to help you out, the other citations were to where you claim that the stipulation that both parties discussed was made. Is that right? Or was it recorded on the record? It was on the record, yes. All right. A1626 is regarding stipulation. I put on the record what Telco's attorney had agreed to and say, for example, now, yesterday, Mr. Maldonado agreed that there is no dispute regarding the structure of the means for coupling. That's on A1626. Okay. Thank you. Thank you very much. And I also think there's ample support in the specification for the regular telephone system being the structure corresponding to the coupling means. If you turn to column 1, lines 14 through 15 of the patent, the specification states telephones are generally available almost everywhere. Then at column 1, lines 57 through 60, it says if a party wishes to make a call, he should be able to accomplish the call from the nearest available telephone. And going to column 3, lines 20 through 22, he uses the nearest available telephone, removes the handset, and dials a special central office. And then on column 5, lines 31 through 32, the telephone 81 is connected to a regular telephone system indicated at 82. And we also have figure 3, which shows the telephone separated from the special exchange by item space 82, which represents the regular telephone system. Now, how about the means for monitoring clause? We have a determination that the function is comparing the amount of money in the calling party's account with the cost of the call. And then we have a conclusion that the corresponding structure is a comparator. What's your position on both of those? Okay. Well, this Court has ruled that a court may not construe a means plus function limitation by adopting a function different from that explicitly recited in the claim. And whereas the claim says means for monitoring, the word monitoring does not appear in the district court statement of the function. In fact, it has five words which do not appear in the claim limitation, including comparing, amount, money, account, and cost, and so forth. Well, it means for monitoring the credit. Right. Means for monitoring the credit. So the credit has to be a difference, right, between sort of the amount you have in the bank and the amount you've used. Well, the credit is the amount you have in your account, and you can use it up. And when you use it up, the call gets disconnected. Yeah. So the only way you can monitor a credit when you have a call that's ongoing, which is using up funds, is to compare, you know, what you've used and what you've got left, right? Well, the key is there's a key difference between monitoring and comparing, and I think that is why these structure ultimately that the district court found. But if a credit is a comparison and you're monitoring the comparison, you've got to compare. You're not monitoring the comparison. You're monitoring the credit, and there's two ways of doing that. You can compute the running cost of the call, and when the cost equals your credit, discontinue the call. Or you can just convert everything into time, and you can start out with an available talking time, which is an announcement to the customer, but it also has a second use as the preset limit. Now, the peg counter is just counting the time, right? Sending that information to the comparator. Yes, that's what the spec says. Which then takes the action that you're suggesting. Right. It cuts off the call. It says if he runs out of time, which is a column four, lines 30 and 31. But I think it's key to understanding what's going on in figure one, which shows that methodology is that block 23, which is the preset time, the word preset is key. To preset something means that you set a value of a variable for later use. So if you were just going to be announcing what the available talk time is, there'd be no reason to preset it. You would just announce it. The fact that the word there says preset indicates that the preset time is going to be used by the comparator, and so you compare the preset time with the call duration from the peg counter. But the announcement function is separate from the monitoring the credit function, correct? Yes, but the same value is being used. The available talk time is the, you tell the customer how much time he has, and then that is also the time the system is going to use to measure when their time is up. So it's the same. In your reply brief, you have a footnote where you actually say that prepayment amount and credit are synonyms for each other. Is that right? Is that how you view this? Well, the prepayment amount is what is paid at the beginning, and then the remaining prepayment amount is the credit available. Right, and you argued in connection with all the other claims, the ones that aren't here, but if you go through the whole Markman hearing to see how you view the whole system to work, the prepayment amount drops as the calls are recorded, right? Right, the prepayment is the initial credit, and then the remaining prepayment is the available credit as it decrements. What exactly do you mean by monitoring time which is converted to money? Well, you monitor the time, the call duration, and then you do a computation as shown in figure two. Block 68 in figure two shows a billing computation, and block 67 is the call duration. So you time the call, and then you multiply it by the rate per minute, and doing the billing computation, and you get a monetary value. Then you compare that to the monetary value, which is the credit balance. So monitoring by time converted to money is that. So you're saying the function encompasses all of those things, all of those various steps? Are you referring to figure two? Yes. We're comparing monetary units in figure two. And so then the function is how many of those steps? Point me to them. Well, block 57 is the call duration. You're timing the call. Block 68 is doing the billing computation, multiplying it by the rate of the call to get a monetary amount, which is the running cost of the call. And in the next block, more credit, then you are comparing the running cost of the call to the credit balance. And if the balance is used up, then the call will be terminated. Now, the specification in column five talks about the call is terminated at lines 15 through 17. The call is terminated because no more credit is available. I added the word is available. In contrast, in the figure one environment, in column three, lines 29 through 31, it says the call can be disconnected by the computer if he runs out of time. So this statement is in the specification. In figure one, the call is cut off when you run out of time. In figure two, the call is cut off when there's no more credit available. But because of the equivalence of time and money, the result is the same in both cases. As in column three, where at lines 45 through 48, it says the amount of credit is equivalent to so many minutes of talking time. So you can do the monitoring either way, and the result is the same. The call will be disconnected when the money is used up or when the time that corresponds to that amount of money is used up. So I take it the allegedly infringing device only monitors time and doesn't monitor money? Yes. Okay. Mr. Flaherty, if we agree with you on the means for controlling and the means for, I'm sorry, the means for connecting. Means for coupling? Means for coupling, thank you. And we disagree with you on the means for monitoring. What does that, what's the outcome here with respect to this consent judgment? I'm sorry. Eritrea needs to win on both issues on appeal. So if you rule against us on either one, we lose. But it affects the determination as to validity, right? The validity, only the indefiniteness of the claim only depends on the no structure in the means for coupling. The other issue is no infringement. Right. I mean, there's two judgments here. One is invalidity and the other is infringement, correct? Right. So the invalidity could be overturned, but we still would lose on no infringement. Okay. Thank you, Mr. Flaherty. You want to save the rest of your time? Yes, Your Honor. Mr. Maldonado? Yes, may it please the Court, Robert Maldonado from Cooper and Dunn and Fratelco. Just to pick up on the concern about invalidity, I just wanted to remind the Court that the patent is expired, expired in 2005. So the Court can, must find, as Mr. Flaherty said, on both issues must find in favor of Eritrea in order for the judgment below to be disturbed. Let me ask you a question, the same question I asked your opponent here. Was there, in the Markman hearing, there was a reference that says the parties agree that the experts won't testify. Yes. Did you take that to mean that there would be no reliance on expert testimony or did you take that to mean that the parties would just rely on the submission of the reports? We believe that we would rely on the intrinsic evidence and that there was no need to refer to extrinsic evidence to construe the claims. But that's not the clearest, there's not a clear agreement on the record as to what that meant, what not testifying meant. Yes, that's correct. It's not clear on the record, but it's clear from the opinion that the judge relied, I believe, exclusively on the intrinsic record for construing the claims in this case. And you're correct that there was no stipulation as to the level of the skill and the art. It was Telco's position all the way up through the hearing that there was no disclosure of the structure for the means for coupling, so Telco didn't present any evidence on the level of skill of the art. And there was no, also there was no evidence as to what the structure of a regular telephone system is and what the components are. Yes. Excuse me, I have a feeling that we're going the same direction. Yes. You've agreed to that already, haven't you? We agreed that the, before the hearing, actually at the hearing, we weighed that argument that there was a structure. And for good reason, because there's plenty of structure indicated in the specification. I'm sorry? And for good reason, because there's plenty of structure indicated in the specification, right? I don't believe that there's plenty of structure in the specification. Why did you agree then? We were trying to narrow the issues and we didn't think that it was an issue that we needed to start with. Well, if you narrowed the issues then, why do you continue to contest them now? Well, we believe that the... What support do you have for the absence of structure? There's no, if you read through the specification, there's no description of any structure that connects the telephone to the special exchange. Whenever the specification talks about a regular telephone system, it's only in the context of a call that has already been indicated. So a regular telephone system indicated at 82, column 5, line 30? It's connected to the regular telephone system. It's not, it doesn't say connected to the special exchange. It's connected to the telephone system. And there's no, there's no disclosure of how it's connected to the telephone system. There has to be an interface that connects the telephone to a telephone system and there's no disclosure of any such interface in the, in the bound. But even if you're not bound by the stipulation here, because the trial judge decided not to be bound by it, and obviously you want to support what the trial judge did, isn't your willingness to stipulate kind of indicative of, of your view that perhaps there wasn't a lot of debate that you could engage in on that topic? Well, I would say regardless of what the party is stipulated to, the, the claims have to be construed in accordance with the specification and whether or not the proof case where the court said even if, even if the expert thinks that there is structure in the spec, which Dr. Goodman said that he thought that the structure was the regular telephone system, that if it's not disclosed in the spec, then the court can't. Look at figure 3. Isn't it, isn't it disclosed at number 82? 82 is a regular telephone system, but there's, again, there's no disclosure as to how you connect to the regular, how the phone connects to the regular telephone system, and how the telephone system connects to the special exchange, because the call has to go from the telephone to the telephone system to the special exchange. You dial the proper number. Well, there's structure. I mean, it has to be structured as though there's no structure disclosed. It's, this isn't rocket science. You dial the number, right? You dial the number, but there's no structure. I'm not talking about function. I'm talking about structure. When you dial the number, it goes where it's been dialed to, right? It goes through certain structure together. Okay, let's go on. Can there be any doubt that one of ordinary skill in the art would not understand the specification to disclose the structure of a regular telephone system? Can I, there's no, there's no evidence presented on that in the court below. Let's go on to the other. Yes, let's go on to monitoring. I can understand your desire to get off that. Figure one, number 22, 23, talks about a preset time according to time and distance. Right, so again, yes, sorry. That militates rather heavily in favor of Mr. Flaherty's argument. Well, first I'd like to say that we have to start with the language of the claims, and the language of the claims is monitoring credit, and credit is undisputably a monetary amount, and throughout the patent, the credit has been described as a monetary amount. There are examples in the, in Airtel's brief that we've cited at page 26 of our brief, where they admit the credit is monetary, I think. Why does, why can't credit be, in this context, be a time credit, which is exactly what you seem to buy, and what they seem to say you buy by putting time into the system? Because you don't buy, you don't buy time, you buy credit, you have a monetary dollar amount. And that credit can be preset time according to time and distance. But the disclosure of the patent, if you look at the patent at the various subjects. I'm reading it, I just read from the figure one, number 23. Figure one says that when you, in box 21, when you dial a call party, the system determines how many available minutes of talking time you have available, but then after that step, the next step is comparing. And I would like to go back to your comment earlier about the peg counter. The peg counter does not, does not output time. If you look at the specification in line four, I'm sorry, column four, lines three through seven, the peg counter is a time and distance computing circuit. So it takes time, and it takes the rate of the call, and it computes the cost of the call. And the value that's input to the comparator is the monetary value. And we see that later on in the section. Provide information for timing the call. Timing the call against credit. And the credit is monetary credit. It's not, it's not a time credit. And you can see that throughout the specification that every time there's a reference to a credit, it's a time. And if you look also, if we look to the prosecution history, you can see that claim nine was rejected based upon, there was a 102 rejection. But the specification seems to use this credit as time or money rather interchangeably. Some instances talking of it in one and some in the other. The specification always refers to credit as money, not as time. If you look at... How do you calculate credit, though, without the time? Well, time is a component of the calculation of the credit. You need the time and you need the rate. But the parameter that's monitored is money. And that's the parameter that's in the claim. It's monitoring credit. It's not monitoring time. And it's, it's, it's clear. I mean, if you, I can, we have all the citations in our brief. Even if we botch your argument, wouldn't this be a structural equivalent, which also is part of the literal meaning of the claim? No, I don't believe it would be because the, the, the equivalence that Aretel's arguing is a functional equivalence, not a structural equivalence. So the function is monitoring credit. The function isn't monitoring time. And the equivalence you're talking about... I'm saying that credit can be time or money. And one is the equivalent of the other in this particular setting. And that's a structural equivalent of the term credit. Well, I believe that that's a functional equivalence, not a structural equivalence, because it's monitoring, the monitoring, what you're monitoring is the function. That's the function of the means plus function element, is monitoring credit and monitoring time. If you're wrong on that, you lose, right? If I'm wrong on what? If you're wrong on whether or not credit can have a structural equivalent, you're wrong, you lose. Whether credit is a structural equivalence, I'm not certain about that, Your Honor. There's, there's no support in the spec for, for time, for credit being time. And, and as I tried to point to earlier in the, in the prosecution history, there was an amendment that was made by Aretel to Claim 9, in which Aretel added the very language we're talking about. And this is at page A1115 of the appendix, where Aretel amended Claim 9 to say, to add the language means for monitoring the credit of the calling party during a completed call. And as to what Aretel meant by that, if you refer to the argument at A1120, this is in response to the rejection. Aretel argued that the reference that was being cited against it, Gehalo, does not provide any way in which to monitor credit information that includes the amount of the remaining prepayment. Is there really a dispute as to what the structure for this is? I mean, the parties are pretty close. They, they believe that it's the comparator, but with the, with the use of the peg count, counter and, and the circuit. I don't believe there's a dispute, a real dispute as to the structure. I think the structure is the comparator. And again, if you look at column four of the patent, the comparator, this is at line seven, column four, line seven, the comparator 29 continuously determines whether the credit is sufficient to pay for the call. And that again is another reference that the credit is money because money is what's used to pay for the call. So essentially though, the district court's conclusion on what the structure is, is, is fairly consistent with what Aretel argued, right? Because the district court found it to be the comparator, but said it makes use of the information from a time and distance computing circuit, correct? So that, i.e. the peg counter incorporates the peg counter into its definition of structure, correct? Um, I don't, I don't think the peg counter is part of the structure for comparing. The comparing is done by the comparator, but it uses information from the peg counter. I agree with that. You took us, you took us to column four there. The next sentence was when the credit equals the used time rate. Yeah. So you got there, they're using credit in the context of time. Well, used time rate means the, the, um, the cost. Used time. Rate. And rate is part of that phrase. And the rate is the time. It's a time rate, not a money rate. It is a money rate. No, they didn't say money rate. They said time rate. Well, that's. And I thought you said that was not at any point in the specification. Well, as the district court found that used time rate is, uh, is a monetary figure. It's not, it's not a time figure. And as your honor points out, it's related to time because you need time plus the, plus the rate to get to the cost. Which you argue the time rate is, you know, so many cents per minute. Yes. So many cents per minute is correct. So if we look also at the, I think you're in the appendix, we included a copy of a slideshow, which Airtel used during the re-examination. And that's on a DVD, A1364. And as you can see in that time show, in that slideshow that Airtel used an animation, which included an egg timer. And you can see a depiction of that at A1358 of the appendix. There was a timer at the bottom of the screen, which showed counting down dollars instead of, instead of time values. Instead of month, um, instead of seconds or minutes, it counted. What is an egg timer time? I'm sorry? What is an egg timer time? Well, in the example that. Times time, doesn't it? In the, in the example that Airtel provided, if time might use money as a measure. I saw it put three and five beside time on the egg counter, which is counting time. Which makes this all a strange. Netherworld of whether time is money or money is time when they're interchangeable. Well, they're, they're, you convert from one to another. But again, if you go back to the language of the claim that talks about credit. And the only support for credit in the spec is that credit is money and not credit is time. And even Airtel does not argue that credit is time. Airtel argues that there's an equivalence. This is a doctrine of equivalence argument that they're making that you can monitor. No, that's, that can't be, see that has to, it can't be a doctrine of equivalence argument. You'd have to, you'd take me, my class to explain that to you. But I, I, a doctrine of equivalence would only apply with after arising technology. In this instance, it has to be a structural equivalent. If you're admitting there's a structural equivalent, district court hasn't dealt with that, it has to go back. I'm not admitting that there's a structural equivalent. Well, you just told me there's an equivalent. No, I said that they, that Airtel is arguing that the function of monitoring credit, which monetary credit or monitoring time actually is the equivalent of a function of monitoring monetary credit. That's what I said. I didn't say that there's a structural equivalence. Um, Airtel argued in its reply brief that district court erred by using the word comparing, but Airtel, Airtel argued itself throughout its briefing that comparing is the right term to use and the disagreement that they had was what, what is the value being compared? I'd like to point out that in all the claims, 1, 9, and 23, there are three independent claims in the patent that, um, all, all three claims recite the monitoring of a monetary value. There's no recitation. There's no claims directed to monitoring time, to comparing the use time to a preset time. That's not, that's not, um, claimed anywhere. And if you look at the... The dispute over prepayment amount was, when you were, when you were disputing that, the was an amount that, that would drop. Right. And Airtel argued that the prepayment amount, which it now says is synonymous with credit, was the dollar figure dropping based on calls having been made. Correct? The, the prepayment amount, well, the prepayment amount, the district court has construed as being the amount that's initially deposited and associated with the special code. And the credit is the amount that, yeah, as you say, it's decremented during the call. Column four, uh, line 29. In other words, the call can be disconnected by the computer if he runs out of what? Runs out of time, yes. Time. Oh, time. I thought it only counts money. Well, it does only count money. Well, then why does it say time? Because it's made a, it's made a... Because time is money. Yes. I understand. Anything further? Thank you, Your Honor. Laird? Well, I would note, uh, where Mr. Maldonado refers to the file history and whenever Airtel uses the phrase means for monitoring the credit, because he interprets credit to be money only, he says, oh, that's an estoppel where we, we admitted that the means for monitoring is, is only comparing credit. So it's, uh, it doesn't make any sense just because we repeat the claim language doesn't mean it's an estoppel. But that presentation to the, the PTO, it was all about money dropping, the, the amount of money dropping. Now there was a way that you got there, but the function that you were pointing out and differentiating over the prior art was about money, right? It was monitoring the credit was a phrase that was used. And our position is that it covers both of these structures, the structures for performing the methodologies of figure one and figure two. Figure one, which is, uh, monitoring the credit by timing, by time, monitoring the credit by time, which is converted to money, which is a function of money, I'm sorry, which is a function of money. And then figure two is, uh, our claim interpretation was monitoring the credit is monitored by time, which is, uh, a function of money, which is converted to money. I'm getting confused myself with that language. That intervening language is not helpful because when you look at the function, it's monitoring the credit, that is a function. Then you look at the structure, we put in that language to try to bridge the gap and show, uh, the judge that there were two different methodologies and therefore there should be two different structures. And, uh, I think the language can be a little bit confusing, but it's not, uh, in the claim precisely. I have nothing further. Thank you, Mr. Blair. All rise. The Honorable Court is adjourned from day to day.